UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

SECURITIES INVESTOR PROTECTION
CORPORATION,                                  :         No. 08-01789 (SMB)
                                              :
            Plaintiff,                        :         SIPA LIQUIDATION
                                              :
      v.                                      :         (Substantively Consolidated)
                                              :
BERNARD L. MADOFF INVESTMENT                  :
SECURITIES LLC,                               :
                                              :
            Defendant.                        :
-------------------------------------------------------X
                                              :
In re:                                        :
                                              :
BERNARD L. MADOFF,                            :
                                              :
            Debtor.                           :
-------------------------------------------------------X
IRVING H. PICARD, Trustee for the             :
Liquidation of Bernard L. Madoff Investment   :
Securities LLC,                               :         Adv. Proc. No. 09-01161 (SMB)
                                              :
            Plaintiff,                        :
                                              :
      v.                                      :
                                              :
FEDERICO CERETTI, *et al.*,                   :
                                              :
            Defendants.                       :
-------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER REGARDING PLAINTIFF'S
MOTION FOR THE ISSUANCE OF A LETTER OF REQUEST
CONCERNING THE EXAMINATION OF NON-PARTY, CRAIG PERRY**

**A P P E A R A N C E S :**

BAKER & HOSTETLER LLP
*Attorneys for Irving H. Picard, Trustee*
45 Rockefeller Plaza
New York, NY 10111

      David J. Sheehan, Esq.
      Geraldine E. Ponto, Esq.

Gonzalo Zeballos, Esq.
Marshall J. Mattera, Esq.
    Of Counsel

CLEARY GOTTLIEB STEEN & HAMILTON LLP
*Attorneys for HSBC Bank Bermuda Ltd. and Craig Perry*
One Liberty Plaza
New York, NY 10006

Thomas J. Moloney, Esq.
Diarra M. Guthrie, Esq.
Jessa I. DeGroote, Esq.
    Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

The plaintiff, Irving H. Picard, trustee ("Trustee") for the estate of Bernard L.

Madoff Investment Securities LLC ("BLMIS") in liquidation pursuant to the Securities

Investor Protection Act, 15 U.S.C. §§ 78aaa, et seq. ("SIPA") and Bernard L. Madoff

("Madoff") has moved for the issuance of a Letter of Request to the Registrar of the

Supreme Court in Hamilton, Bermuda (the "Request").  (*Motion for the Issuance of*

*Letter of Request*, dated Oct. 3, 2018 ("Motion") (ECF Doc. # 372).)[1]  The Trustee seeks

pre-trial discovery in the form of oral testimony from Craig Perry ("Perry"), a senior

employee of HSBC Bank Bermuda Limited ("HSBC Bermuda").  Perry and HSBC

Bermuda (together, the "Respondents") oppose the Motion.[2]  For the reasons that

follow, the Trustee's Motion is granted to the extent indicated.

---

[1]    "ECF Doc. #" refers to documents filed on the electronic docket of this adversary proceeding. References to other dockets will include the relevant case number.

[2]    HSBC Bermuda was dismissed as a defendant from this adversary proceeding by stipulated order dated Mar. 9, 2017, based on this Court's memorandum opinion and order on extraterritoriality and comity dated Nov. 21, 2016.  (ECF Doc. # 281.)  On February 25, 2019, the Second Circuit reversed and vacated the order dismissing HSBC Bermuda and other subsequent transferees.  *In re Picard*, Case No. 17-2992(L), 2019 WL 903978 (2d Cir. Feb. 25, 2019).  Following its issuance, the Court spoke telephonically with the attorneys for the Trustee and the Respondents to solicit their views regarding whether the Second Circuit's decision, which would reinstate HSBC Bermuda as a party subject to

## BACKGROUND

The allegations in the Trustee's *Fourth Amended Complaint* ("FAC"), dated Mar. 17, 2014 (ECF Doc. # 100), are summarized at length in *Picard v. Ceretti* (*In re BLMIS*), Adv. Proc. No. 09–01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) ("*Kingate Decision*").  I assume familiarity with the *Kingate Decision* and limit the background discussion to the facts necessary to decide the Motion.

Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. (together, the "Kingate Funds") were BLMIS feeder funds.  (Motion ¶ 5.)  They were operated by Federico Ceretti ("Ceretti") and Carlo Grosso ("Grosso") through Kingate Management Limited ("KML").  (*Id.* ¶¶ 9-13.)  Through KML and other management entities, Ceretti and Grosso solicited investments in the Kingate Funds, maintained accounts with BLMIS and invested their own investors' funds in the Kingate Funds' BLMIS accounts.  (*Id.* ¶¶ 9-15.)  Within six years of the commencement of this SIPA proceeding on December 11, 2008 ("Filing Date"), they withdrew $825 million.  (FAC ¶ 249.)  However, the Kingate Funds withdrew less than they deposited with BLMIS, and ultimately lost approximately $700 million once it was learned that Madoff had run a Ponzi scheme and there was little if any money to pay off BLMIS' customers, including the Kingate Funds.  (*Id.* ¶ 3.)

The Trustee seeks to recover the $825 million withdrawn by the Kingate Funds within six years of the Filing Date.  (*Id.* ¶ 249; Counts IV, V, VI & VII); *see Kingate*

_____

ordinary discovery, mooted the Motion.  In response, both sides to the dispute asked me to resolve it. HSBC Bermuda remains a non-party until the Second Circuit issues the mandate.  HSBC Bermuda indicated that it may seek rehearing and/or file a petition for a writ of *certiorari*, and the issuance of the mandate may be delayed indefinitely.  *See* FED. R. APP. P. 41.  Furthermore, HSBC Bermuda contends that this Court lacks personal jurisdiction over it.

*Decision* at *2.  His case turns on what the Kingate Funds knew about Madoff's Ponzi

scheme.  To sidestep the limitations on the avoidance of transfers contained in 11 U.S.C.

§ 546(e) (the "safe harbor"), the Trustee must establish that the Kingate Funds had

actual knowledge that BLMIS was not engaged in trading securities.[3]  *Kingate Decision*

at *12.  The *Kingate Decision* concluded that the FAC adequately pleaded the Kingate

Funds' actual knowledge based on a combination of factors, including warnings that

their service providers could not perform adequate due diligence, the monitoring of the

BLMIS investments disclosed impossible trades and unusual industry practices.  In

addition, Ceretti and/or Grosso (i) deflected inquiries directed at Madoff for fear of what

they would disclose, (ii) silenced, attacked and threatened those who questioned Madoff

or his practices, (iii) fabricated responses to investor inquiries about Madoff and (iv)

feared what the Kingate Funds' auditor's inquiry into BLMIS might reveal.  *Id.* at *13-15.

If the Trustee cannot prove actual knowledge and the safe harbor applies, he can

still recover the intentional fraudulent transfers, aggregating $395 million, made by

BLMIS to the Kingate Funds within two years of the Filing Date pursuant to 11 U.S.C. §

548(a)(1)(A).  *Id.* at *2.  In that case, he must circumvent the "good faith for value"

defense under 11 U.S.C. § 548(c) by establishing that the Kingate Funds willfully blinded

themselves to the fact that BLMIS was not actually engaged in trading securities.[4]  *Id.*

at *12.  Willful blindness consists of two elements: "(1) the defendant must subjectively

---

[3]    The FAC also includes a claim to recover preferential transfers, aggregating $255 million, made within ninety days of the Filing Date.  (FAC ¶ 251, Count I); *Kingate Decision* at *2.  This claim is also protected by the safe harbor, and the Trustee must establish the same degree of knowledge needed to support the six-year fraudulent transfer claims.

[4]    The Kingate Funds gave "value" because they were net losers; they withdrew their own deposits.

4

believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769, 131 S. Ct. 2060, 179 L. Ed. 2d 1167 (2011).

## The Proposed Letter of Request

HSBC Bermuda (f/k/a Bank Bermuda Limited) served as custodian for the Kingate Funds during their entire existence. (Motion ¶ 23; FAC ¶¶ 39, 41, 79-80, 242-44.) As custodian, HSBC Bermuda maintained bank accounts for the Kingate Funds, entered into transactions on their behalf and transferred funds into and out of the Kingate Funds' bank account. (Motion ¶ 28.) HSBC Bermuda was the bank through which the Kingate Funds made all deposits into and redemptions from BLMIS. (*Id.* ¶ 22.) All funds transferred from the Kingate Funds' customers to BLMIS went through the Kingate Funds' accounts at HSBC Bermuda. (*Id.*) Perry was the HSBC Bermuda senior account manager for the Kingate Funds and communicated with agents of the Kingate Funds regarding BLMIS, including Grosso and Shazieh Salahuddin ("Salahuddin"), an employee of KML. (*Id.* ¶¶ 23, 28.) In internal communications at KML, Salahuddin identified discrepancies with the net asset values of the Kingate Funds and lack of diligence materials. (FAC ¶¶ 121, 131.)

The Trustee filed the Motion because Perry, a Bermuda resident, refuses to testify voluntarily. The Request, which is attached to the Motion as part of Exhibit A, lists the following sixteen topics (each a "Topic" and collectively, "Topics") for the examination of Perry:

1.    The custodian agreement between HSBC and the Kingate Funds.
2.    Custody of the Kingate Funds' assets by BLMIS.

3.    HSBC's procedures for performing its role as the Kingate Funds' custodian.

4.    Change in procedures following HSBC's acquisition of The Bank of Bermuda Limited in 2004.

5.    Accounts held by the Kingate Funds at HSBC and the administration of those accounts, including the deficits and/or shortfalls in the accounts, the "sweep account," and/or use of web-based account access.

6.    HSBC's fees for acting as the Kingate Funds' custodian.

7.    The daily and/or weekly "Client View" reports sent by HSBC to KML.

8.    Forward contract and/or currency hedging transactions performed by HSBC on behalf of the Kingate Funds.

9.    Communications between Ms. Salahuddin and other KML employees and HSBC concerning the Kingate Funds' accounts with HSBC.

10.   Internal communications concerning the Kingate Funds' accounts with HSBC.

11.   Communications with Messrs. Grosso and Ceretti, and FIM regarding the Kingate Funds' accounts with HSBC.

12.   HSBC's hold placed on the Kingate Funds' accounts.

13.   Communications from and/or with the Kingate Funds' investors after December 11, 2008.

14.   HSBC's freezing of the Kingate Funds' HSBC bank accounts after December 11, 2008.

15.   Payments made out of the Kingate Funds' HSBC bank accounts after December 11, 2008.

16.   HSBC's review of BLMIS.

(Request 6-7.)  In support, the Trustee keys the Topics to specific allegations in paragraphs of the FAC.  (Request 5; FAC ¶¶ 2-3, 8, 79-80, 217-22, 225, 242-61.)

**Opposition to the Proposed Letter of Request**

The Respondents oppose the Motion and the Request.  (*Memorandum of Law in Opposition to the Trustee's Motion for a Letter of Request Pursuant to The Hague Convention* ("*Opposition*"), dated Oct. 9, 2018 (ECF Doc. # 374).)  Conceding that the issuance of the Request is committed to the Court's discretion, the Respondents nevertheless contend that the Trustee has failed to demonstrate the materiality and

6

relevance of the information he seeks or that the Request is necessary to obtain the information.  (*Id.* ¶ 5.)  They argue that the paragraphs in the FAC identified by the Trustee contain undisputed information, seek irrelevant information, Perry lacks direct knowledge and the information can be obtained from the Kingate Funds.  (*Id.* ¶¶ 6-8.)

**Trustee's Response**

The Trustee's response (***Response in Further Support of Plaintiff's Motion for the Issuance of Letter of Request*** ("*Response*"), dated Oct. 23, 2018 (ECF Doc. # 380)), asserts that the information sought from Perry is "highly relevant to the claims and defenses in this proceeding and proportional to the needs of the case."  (*Id.* at 2.)  Perry has been an employee of HSBC Bermuda and its predecessor from at least 2001 to the present, was the senior account manager responsible for the Kingate Funds and a "key person responsible for performing HSBC's duties as custodian to the Kingate Funds."  (*Id.*, Ex. 2, ECF p. 3-4 of 9.)  As such, Perry "is a vital source of information relating to HSBC [Bermuda]'s role as custodian for the Kingate Funds for the entirety of their operations."  (*Id.* at 2.)

The Trustee believes that Perry will provide information that bears on "the flows of money into and out of the Kingate Funds and the Kingate Funds' state of mind and business relationships."  (*Id.*)  In particular, Perry communicated with Ceretti, Grosso, KML employees and others who played key roles in management of the Kingate Funds, which will bear on the Kingate Funds' "state of mind," including whether they had actual knowledge of the BLMIS fraud.  (*Id.* at 4 & n.13.)  The knowledge of the Kingate Funds' agents, including Ceretti, Grosso and KML, may be imputed to the Kingate Funds.  (*Id.* at 4, n.14.)  Thus, Perry's testimony may assist the Trustee in proving the claims in the

FAC.  (*Id.* at 5.)  In addition, the Trustee and the Kingate Funds have not agreed on the

amount of the transfers from BLMIS to the Kingate Funds.  (*Id.*, Ex. 1, ECF p. 1, 3-4 of

4.)  Finally, the Trustee seeks to question Perry about the freezing and unfreezing of

accounts and transfers out of the Kingate Funds' HSBC Bermuda bank accounts after

December 11, 2008, the date of Madoff's arrest.  (*Id.*, Ex. 2, ECF p. 8 of 9.)

**Supplemental Opposition**

Respondents filed their *Supplemental Memorandum of Law in Further Support

of HSBC Bank Bermuda and Craig Perry's Opposition to Trustee's Motion for a Letter

of Request* ("*Supplemental Opposition*"), dated Oct. 29, 2018 (ECF Doc. # 384).)[5]  For

the most part, the *Supplemental Opposition* repeats the arguments in the *Opposition*.

In addition,  the Respondents submitted the *Declaration of Jessa DeGroote in Support

of the Supplemental Memorandum of Law in Further Support of HSBC Bank Bermuda

and Craig Perry's Opposition to Trustee's Motion for a Letter of Request* ("*DeGroote

Declaration*"), dated Oct. 29, 2018 (ECF Doc. # 383), which attaches various documents

relating to discovery limitations under Bermuda law, including an opinion issued by a

Bermuda court on consideration of a letter of request from a U.S. court, *NetBank v.

Commercial Money Center*, Civ. J. 2004 No. 112, [2004] Bda L.R. 46 (Sup. Ct. Bermuda

Oct. 27, 2004) ("*NetBank*").  The Respondents argue that Bermuda limits examinations

to trial testimony, and consequently, the Trustee's proposed topics must be narrowed

under principles of international comity.  (*Supplemental Opposition* 1 n. 3.)

---

[5]    The briefing schedule agreed to by the parties and ordered by the Court allowed for the
Respondents to file a reply to the Trustee's response.  (*Stipulation and Order Setting Briefing Schedule*,
dated Oct. 22, 2018 (ECF Doc. # 377).)  The Trustee had not filed a memorandum of law with the Motion.

**Hearing**

The Court heard the Motion on October 31, 2018.  (Transcript of 10/31/18 Hr'g ("Tr.") (ECF Doc. # 400).)  The Respondents' counsel urged the Court to consider not only the standard for discovery under Rule 26, but also "apply[] principles of comity, send a request to Bermuda that is within the scope of what they allow there." (*Id.* 19:8-10.)  Bermuda, like other U.K. jurisdictions, generally does not allow discovery depositions, but will allow the taking of testimony for purposes of trial where the witness will be unavailable.  (*Id.* 19:18-24.)  The Respondents argued that the Request should be limited "to the issues at trial and relevant to what will be presented at trial . . . ." (*Id.* 20:19-20.)[6]  The Trustee responded that this Court did not have to concern itself with the Bermuda discovery rules because "as a practical matter, the way that we envision this issue being dealt with is by both the Bermuda examiner and the Bermuda court.  And they can deal with the interpretation of Bermuda law." (*Id.* 24:8-11.)

## DISCUSSION

**Letters Rogatory**

A letter rogatory, or letter of request, is "a formal request from a court in which an action is pending, to a foreign court to perform some judicial act." *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins.*, 841 F. Supp. 2d 769, 775 (S.D.N.Y. 2012); *accord Blagman v. Apple, Inc.*, No. 12 Civ. 5453 (ALC)(JCF), 2014 WL 1285496, at *3 (S.D.N.Y. Mar. 31, 2014) ("Letters rogatory are the means by which a court can formally request that a court in another country lend its judicial assistance in obtaining evidence or

---

[6]      The Respondents concede that Topics 9 and 11, which deal with communications between HSBC Bank and the Kingate Funds or their agents, might be proper if "properly framed."  (Tr. 21:4-21.)

performing some other judicial act."); 28 U.S.C. § 1781(b)(2) (providing that letters rogatory may be transmitted "directly from a tribunal in the United States to the foreign or international tribunal . . . to whom it is addressed . . .").  Letters of request are "the medium, in effect, whereby one country, speaking through one of its courts, requests another country, acting through its own courts and by methods of court procedure peculiar thereto and entirely within the latter's control, to assist the administration of justice in the former country."  *United States v. Al Fawwaz*, No. S7 98 Crim. 1023 LAK, 2014 WL 627083, *2 (S.D.N.Y. Feb. 18, 2014) (quoting *DBMS Consultants Ltd. v. Computer Assocs. Int'l, Inc.*, 131 F.R.D. 367, 369 (D. Mass. 1990) (quoting *The Signe*, 37 F. Supp. 819, 820 (E.D. La. 1941))).

Parties in civil proceedings in United States courts may use letters rogatory to take evidence from "a specific person within the foreign jurisdiction."  *Lantheus*, 841 F. Supp. 2d at 775 (citation omitted); *see also* FED. R. CIV. P. 28(b)(1)(B).[7]  Letters rogatory are "an appropriate mechanism for securing the testimony of other witnesses who cannot be compelled to appear" by the court in which the action is pending, *In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244, 259 (S.D.N.Y. 2011) (citation and internal

---

[7]    Rule 28(b) provides in pertinent part:

(1) *In General.* A deposition may be taken in a foreign country:

. . .

    (B) under a letter of request, whether or not captioned a "letter rogatory";

. . . .

(2) *Issuing a Letter of Request or a Commission.* A letter of request, a commission, or both may be issued:

    (A) on appropriate terms after an application and notice of it; and

    (B) without a showing that taking the deposition in another manner is impracticable or inconvenient.

quotations omitted), and may be "the only means to request documents or testimony from foreign non-parties over whom the court has no personal jurisdiction and who are beyond the subpoena power of the court." *The GAP, Inc. v. Stone Int'l Trading, Inc.*, No. 93 Civ. 0638 (SWK), 1994 WL 38651, *1 (S.D.N.Y. Feb. 4, 1994). The decision of whether to issue letters rogatory "is committed to the court's discretion." *Blagman*, 2014 WL 1285496, at *4; *see also United States v. Al Fawwaz*, 2014 WL 627083, *2 ("[I]t is well settled that the decision of whether to issue letters rogatory lies within a district court's sound discretion.") (quoting *United States v. Jefferson*, 594 F. Supp. 2d 655, 675 (E.D. Va. 2009) (citation omitted)).

In considering whether to issue a letter of request to a foreign court for the taking of evidence, "courts apply the discovery principles contained in Federal Rule of Civil Procedure 26." *Villella v. Chem. & Mining Co. of Chile Inc.*, No. 15 Civ. 2106 (ER), 2018 WL 2958361, *3 (S.D.N.Y. June 13, 2018) (quoting *Joseph v. Gnutti Carlo S.p.A.*, No. 15-cv-8910 (AJN), 2016 WL 4083433, at *1 (S.D.N.Y. July 25, 2016) (citation omitted)); *see also Lantheus*, 841 F. Supp. 2d at 776; *Blagman*, 2014 WL 1285496, at *4; *cf. Bisnews AFE (Thailand) Ltd. v. Aspen Research Grp. Ltd.*, No. 11 Civ. 3108 (NRB), 2012 WL 4784632, at *3 (S.D.N.Y. Oct. 4, 2012) (concluding that while there is no uniform standard for evaluating the issuance of letters rogatory, "it is clear that a court should not authorize the service of letters rogatory if it would not approve of the discovery requests in a purely domestic context"). Rule 26, applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7026, provides that, unless limited by court order:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of

the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).

Rule 26 is "liberally construed and is necessarily broad in scope in order 'to encompass any matter that bears on, or that reasonably could lead to [an] other matter that could bear on, any issue that is or may be in the case.'" *MacCartney v. O'Dell*, No. 14-cv-3925 (NSR), 2018 WL 5023947, at *2 (S.D.N.Y. Oct. 16, 2018) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978)).  Discovery is "not limited to issues raised by the pleadings," nor to "the merits of a case," *Id.* (quoting *Oppenheimer*, 437 U.S. at 351), and is warranted "if there is 'any possibility' that the information sought to be obtained may be relevant to the subject matter of the action."  *Id.* (quoting *Daval Steel Prods. V. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991)).  Discovery is relevant "if there is a possibility that the information sought may [] have a bearing on *any party's* claim or defense." *Id.* (citation omitted, emphasis in original).  "While not 'unlimited, relevance, for purposes of discovery, is an extremely broad concept.'" *Joseph v. Gnutti*, 2016 WL 4083433, at *1 (quoting *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 561 (S.D.N.Y. 2013)).  "It is well-established within this Circuit that [Rule 26] will be satisfied if there is 'any possibility' that the information sought to be obtained may be relevant to the subject matter of the action." *MacCartney v. O'Dell*, 2017 WL 766906, at *2 (quoting *Daval Steel*, 951 F.2d at 1367 (quoting *Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Maryland*, 122 F.R.D. 447,

449 (S.D.N.Y. 1988) (quoting *Mallinckrodt Chem. Works v. Goldman Sachs & Co.*, 58 F.R.D. 348, 353 (S.D.N.Y. 1973)))).

The burden of demonstrating the relevance of the requested discovery "falls on the party seeking discovery, but once relevance has been shown, it is up to the responding party to justify curtailing discovery." *Joseph v. Gnutti*, 2016 WL 4083433, at *1 (quoting *Chen-Oster*, 293 F.R.D. at 561). While the party seeking discovery pursuant to a letter of request bears the burden of persuasion, "that burden is not a heavy one." *Villella*, 2018 WL 2958361, at *3 (citations omitted). On the other hand, "[a] party opposing issuance of a letter rogatory must show good reason why such letter should not issue." *Sec. Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 24, 26 (D. Conn. 2003) (quotation omitted). The party opposing discovery "must supply specific evidence demonstrating the nature of the burden." *Blagman*, 2014 WL 1285496, at *8 (holding that there was no showing of undue burden where the party merely noted the possibility of "significant expenses" and "significant delays").

**Comity**

The Respondents have argued that the requested examination is improper under principles of comity because it does not comply with Bermuda law. Comity is defined as "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 163-64, 16 S. Ct. 139, 40 L. Ed. 95 (1895) (noting that comity "is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other"). In *Société Nationale Industrielle*

13

*Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 107 S. Ct. 2542, 96 L.
Ed. 2d 461 (1987), the Supreme Court addressed the role of comity in connection with
pre-trial discovery from a foreign party. There, the plaintiffs brought products liability
claims arising out of the crash of an aircraft manufactured in France. The plaintiffs
served discovery requests on two French defendants over whom the District Court had
personal jurisdiction that were owned by the French Government. *Id.* at 524. The issue
before the Supreme Court was whether the Hague Convention on the Taking of
Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555 (the
"Hague Evidence Convention") — a treaty — provided the exclusive means of taking
discovery abroad.[8] *Société Nationale*, 482 U.S. at 524.

Although the Supreme Court concluded that the Hague Evidence Convention was
not the exclusive means of obtaining foreign discovery from a signatory, it observed that
considerations of comity applied. Noting that "American courts, in supervising pretrial
proceedings, should exercise special vigilance to protect foreign litigants from the
danger that unnecessary, or unduly burdensome, discovery may place them in a
disadvantageous position," *id.* at 546, and that when parties seek evidence abroad, the
courts "must supervise pretrial proceedings particularly closely to prevent discovery
abuses," *id.,* the Court stated:

> [W]e have long recognized the demands of comity in suits involving
> foreign states, either as parties or as sovereigns with a coordinate interest
> in the litigation. *See Hilton v. Guyot,* 159 U.S. 113, 16 S. Ct. 139, 40 L. Ed.
> 95 (1895). American courts should therefore take care to demonstrate due
> respect for any special problem confronted by the foreign litigant on
> account of its nationality or the location of its operations, and for any

---

[8]    While the United Kingdom is a party to the Hague Evidence Convention, it has not extended its
application to the U.K. territory of Bermuda.

> sovereign interest expressed by a foreign state.  We do not articulate
> specific rules to guide this delicate task of adjudication.

*Id.* (footnote omitted).[9]

The Trustee argues that comity is not a concern where, as here, he seeks to take the deposition of a non-party over whom the Court lacks personal jurisdiction.  After all, the Bermuda Court will decide the appropriate scope of inquiry.  However, the Bermuda Court will face its own comity concerns if this Court ignores it.  If this Court orders foreign discovery without any consideration of the laws of Bermuda, the Bermuda Court will have to decide whether to honor an order of this Court under principles of comity that may conflict with its internal discovery rules.  *See NetBank* at 14[10] (quoting *Minnesota v. Philip Morris Inc.*, [1997] EWCA (Civ) 2241, [¶ 17], [1998] I.L. Pr. 170 (Eng.) ("[T]he approach of this court and other courts in this jurisdiction will be to seek to assist a foreign court wherever it is appropriate.")).  In addition, while most decisions consider comity when determining whether to follow the Hague Evidence Convention, *see, e.g., Crouch v. Liberty Pride Corp.*, No. CV 15-974 (JS)(AYS), 2016 WL 4718431, at *2 (E.D.N.Y. Sept. 9, 2016); *Al-Rayes v. Willingham*, No. 3:15-CV-107-J-34JBT, 2016 WL 9528073, at *1 (M.D. Fla. Aug. 11, 2016)*; Cascade Yarns, Inc. v. Knitting Fever,*

---

[9]    Earlier in its opinion, the Supreme Court identified several factors relevant to a comity analysis: (1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.  482 U.S. at 544 n. 28 (quotation marks and ellipsis omitted) (quoting the Restatement of Foreign Relations Law of the United States (Revised) § 437(1)(c) (Tent. Draft No. 7, Apr. 10, 1986, pp. 28-29) (approved May 14, 1986)).  As noted, however the Supreme Court did not adopt specific rules to guide the comity analysis relating to foreign discovery requests.

[10]    A copy of the *NetBank* decision is attached as Exhibit D to the *DeGroote Declaration*.  The page references refer to the page numbers listed in the upper right-hand corner of each page of Exhibit D.

*Inc.*, No. C10-861 RSM, 2014 WL 202102, at *1-2 (W.D. Wash. Jan. 17, 2014); *Luzzi v.*

*ATP Tour, Inc.*, No. 3:09-CV-1155-J-32MCR, 2010 WL 746493, at *1 (M.D. Fla. Mar. 2,

2010); *Madanes v. Madanes*, 199 F.R.D. 135, 141 (S.D.N.Y. 2001), comity

considerations have been applied even when the letter of request is directed, as here, to

a non-signatory of the Hague Evidence Convention.  *Triumph Aerostructures, LLC v.*

*Comau, Inc.*, No. 3:14-CV-2329-L, 2015 WL 5502625, at *3 (N.D. Tex. Sept. 18, 2015).

The Trustee's request to take Perry's deposition does not raise the concerns

regarding abusive foreign discovery articulated by the Supreme Court.  The Trustee does

not seek the production of documents, and the costs and inconvenience to Perry and

HSBC Bermuda should be minimal.  Moreover, his testimony may prove important to

the Kingate Funds' state of mind and notwithstanding the Respondents' speculation,

Perry may know something that no one else does.  If Perry knows nothing, as the

Respondents contend, it will be a very short deposition.

Nevertheless, U.S. and Bermuda law conflict regarding the appropriate scope of

pre-trial depositions.  Pre-trial oral examinations are not *per se* improper under

Bermuda law.  However, unlike U.S. law, Bermuda law distinguishes between a

deposition seeking direct evidence for use at trial and a deposition seeking, or "fishing"

for, further evidence.  The former is permissible; the latter is not.  *See NetBank* at 13-14.

The appropriate test, adopted by the *NetBank* court, at 12, was explained by the English

Court of Appeal in *First Am. Corp. v. Sheik Zayed Bin Sultan Al-Nahyan*, [1998] EWCA

(Civ) 817, [¶ 22] [1999] I.L. Pr. 179 (Eng.):

> If oral evidence is being sought for the purpose of use at trial and if there is
> good reason to believe that the intended witness has knowledge of matters
> in issue at the trial so as to be likely to be able to give evidence relevant to

16

those issues, I do not understand how an application to have the intended
witness orally examined can be described as "fishing". It cannot be
necessary that it be known in advance what answers to the questions the
witness can give. Nor can it be necessary that the answers will be
determinative of one or other of the issues in the action.

Furthermore, the question of what is relevant to an issue in the foreign action "is

primarily a matter for the foreign court." *NetBank* at 13 (quoting *First Am. Corp.*,

[1998] EWCA (Civ) 817, [¶ 26]). Accordingly, a Bermuda court will "look at the issue of

the relevance of the requested testimony, if it is raised, in broad terms, leaving to the

foreign court, in all but the clearest cases, the decision as to whether particular answers,

or answers on particular topics, would constitute relevant admissible evidence." *Id.*

(quoting *First Am. Corp.*, [1998] EWCA (Civ) 817, [¶ 7]).

**The Topics**

Earlier in this opinion, the Court set out the relevant issues relating to the

Kingate Funds' state of mind and actions: what it knew, what it suspected, what it did.

That state of mind can only be proven through the testimony of individuals, including

individuals whose own knowledge may be imputed to the Kingate Funds. Moreover,

Perry will be unavailable at trial, and the parties will have to use his deposition in lieu of

his live testimony. Nevertheless, many of the Topics read like the Trustee is "fishing"

and their relevance has not been explained. For example, several of the Topics seek

general information regarding Kingate Funds' bank accounts. (*See* Topics 3, 4, 5, 8, 10.)

The Trustee has failed to articulate what evidence he hopes to garner from this inquiry.

Rather than parse the various Topics, the Court has considered those areas in

which Perry may be able to give probative testimony based on his position and the

Court's knowledge of the issues. Because I do not know what Perry will say, it is

impossible to be more precise than to map out the following general areas that are highly relevant to the issues to be tried:

### 1.    HSBC's role as the Kingate Funds' custodian.

HSBC Bermuda served as the custodian for Kingate Funds' cash assets, and Perry was the senior account manager.  It is not clear whether HSBC Bermuda performed any duties relating to the Kingate Funds' BLMIS accounts aside from transfers between BLMIS and the Kingate Funds although the Trustee alleges that HSBC issued a warning about the Kingate Funds based on Madoff's penchant for secrecy.  (FAC ¶ 225.)  Given his position, Perry may have personal knowledge regarding the warning and the extent, if any, that HSBC Bermuda monitored Kingate Funds' assets including the assets supposedly held by BLMIS.  If it did, any information HSBC Bermuda learned about the state of the assets in the BLMIS accounts or Madoff would be highly relevant to its own state of mind which may be imputable to the Kingate Funds.

According to the Trustee, a dispute exists between the Trustee and the Kingate Funds regarding the actual amount of deposits into and withdrawals from the Kingate Funds' BLMIS accounts.  That money passed through HSBC Bermuda, and Perry may have direct knowledge of the transfers or be able to interpret documents in the Trustee's possession that reflect those transfers.

 Finally, HSBC Bermuda's compensation arrangement with the Kingate Funds is relevant.  For example, Trustee should be entitled to inquire into whether any compensation was based on the value of the BLMIS assets or the number of transactions

relating to BLMIS.  If it was, HSBC Bermuda might be more willing to turn a blind eye to Madoff's fraud to ensure that the compensation would continue to flow.

### 2.      Communications With the Kingate Funds Regarding Their BLMIS Accounts.

The Trustee alleges that Perry or others at HSBC Bermuda communicated with agents of Kingate Funds, including Ceretti, Grosso and their service providers such as KML.  One example is included in paragraph 225 of the *Fourth Amended Complaint* where the Trustee alleges:

> In June 2008, HSBC issued a warning about the Kingate Funds due lack of communication and information coming from Madoff regarding his strategy and the IA Business.  Grosso dismissed the HSBC analyst as a "junior guy" and a "joker" for "rehashing old arguments" against Madoff. Grosso admitted that such concerns about Madoff were "not new" and that "*[t]his has been going on for 20 years.*" Ceretti communicated directly with an HSBC Monaco representative, "remind[ing] them that they [HSBC] are [] administrator of Kinagate [sic] and sevral [sic] other funds and that also several clients *are banking* with them . . . ."  The HSBC Monaco representative reassured Ceretti that people would be fired for issuing the warning.

FAC ¶ 225 (emphasis and alterations in original).

In addition to the warning, Perry may have personal knowledge of statements by Grosso and/or Ceretti threatening HSBC, dismissing the HSBC warning with *ad hominin* attacks on the HSBC analyst who issued it and deflecting inquiries regarding Madoff.  This evidence bears directly on the Kingate Funds' state of mind.  In fact, the Court relied on the allegations in paragraph 225 in ruling that the *Fourth Amended Complaint* adequately alleged the Kingate Funds' actual knowledge of Madoff's Ponzi scheme.  *See Kingate Decision* at *14.

The Court does not mean to suggest that the Trustee's inquiry is limited to the allegations in paragraph 225 and the Respondents acknowledge that Topics 9 and 11 are appropriate areas of inquiry.  Any communications between HSBC Bermuda and the Kingate Funds relating to their BLMIS accounts or Madoff is relevant.  As the Court cannot anticipate what Perry knows, it cannot restrict the inquiry any further.

### 3.    Other Communications Regarding Kingate Funds' BLMIS Accounts.

As custodian, HSBC Bermuda's own knowledge of the Kingate Funds' BLMIS accounts may also be imputable to the Kingate Funds.  As the senior account manager, Perry may have communicated with other persons outside of HSBC Bermuda or the Kingate Funds regarding the Kingate Funds' BLMIS accounts or Madoff.  For the same reasons, these statements may be probative of HSBC Bermuda's knowledge or suspicions, and its knowledge and suspicions may be imputable to the Kingate Funds.

### 4.    The Reasons for Freezing Kingate Funds' HSBC Bermuda Bank Accounts and Subsequent Payments From Those Accounts.

The Motion indicates that HSBC Bermuda froze the Kingate Funds' bank accounts after Madoff's arrest but then unfroze them.  The freezing of the accounts may have resulted from HSBC Bermuda's concern regarding the Kingate Funds' BLMIS assets following Madoff's arrest.  And having frozen the accounts, the Trustee is entitled to question Perry regarding the reason for unfreezing the accounts notwithstanding the disclosure of Madoff's fraud.

## CONCLUSION

The Court has considered the Topics, and in the exercise of its discretion and, in light of the comity considerations articulated by Respondents, concludes that the deposition should be limited to the areas set out above. Nevertheless, it is not the intent of the Court to hamstring the Trustee and he should be entitled to leeway in the questions he asks within the scope of these areas. The Court does not know what Perry will say and the Trustee does not have to accept his or HSBC Bermuda's representation that he knows nothing or his knowledge duplicates what others know. Accordingly, the Trustee should redraft his letter of request consistent with this opinion and settle it on notice to Perry and HSBC Bermuda.

So ordered

Dated:   New York, New York
         March 5, 2019

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge